UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KIMBER WEGLEITNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22 CV 67 RWS |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM AND ORDER**

Plaintiff Kimber Wegleitner brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act.  For the reasons discussed below, the Commissioner's decision will be reversed and remanded for further proceedings.

## **Background**

Wegleitner filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on February 24, 2020.  (Tr. 241, 248).  Wegleitner alleged that she became disabled on January 15, 2016, due to bipolar disorder, anxiety, depression, degenerative disc disease, asthma, migraines, and kidney stones.  (Tr. 241, 248, 289).  Wegleitner later amended the date of her alleged onset of disability to April 19, 2018.  (Tr. 275).

Wegleitner's applications were denied at the initial claims level. (Tr. 157, 161). Wegleitner then filed a request for reconsideration. (Tr. 170). Upon reconsideration, Wegleitner's applications were once again denied. (Tr. 172, 177). Wegleitner then filed a timely request for a hearing before an administrative law judge ("ALJ"). (Tr. 182). A hearing was held on March 30, 2021. (Tr. 42). On July 20, 2021, the ALJ issued a decision denying Wegleitner benefits, finding that she was not under a disability at any point from August 6, 2019, through the date of the decision. (Tr. 15–33).[1] Wegleitner appealed the ALJ's decision, but the Appeals Council denied her request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(g).

Wegleitner filed this action on January 18, 2022, seeking judicial review of the Commissioner's final decision. Wegleitner argues that the ALJ's decision should be reversed and remanded because he erred in formulating her residual functional capacity ("RFC"). Wegleitner requests that I reverse and remand the Commissioner's decision for an award of benefits or for further evaluation.

---

[1] Wegleitner filed similar applications for benefits in 2017, which were denied on August 5, 2019. (Tr. 16, 83–92). Wegleitner requested that the ALJ reopen her previous applications, but the ALJ declined to do so. (Tr. 16). As a result, the ALJ assessed only whether Wegleitner was under a disability at any point after August 5, 2019. (Tr. 17).

## **Legal Standard**

To be eligible for disability insurance benefits or supplemental security income under the Social Security Act, a claimant must prove that she is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); Baker v. Secretary of Health and Hum. Servs., 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity" due to a "medically determinable physical or mental impairment" that can be expected to result in death or which has lasted or can be expected to last for at least twelve continuous months. 42 U.S.C. § 423(d)(1)(A). A claimant will be declared disabled only if her impairment or combination of impairments is of such severity that she is unable to engage in her previous work and—considering her age, education, and work experience—she is unable to engage in any other kind of substantial gainful work in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner engages in a five-step evaluation process: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the claimant has the RFC to perform her past relevant work; and (5) whether the claimant has the RFC to perform other jobs

that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520. The burden of proof rests with a claimant through the first four steps but shifts to the Commissioner at step five. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).

When reviewing a denial of disability benefits, my role is limited to determining whether the Commissioner's decision complies with the relevant legal requirements and is supported by substantial evidence on the record as a whole. Id. Substantial evidence refers to less than a preponderance but enough for a reasonable person to find it adequate to support the Commissioner's decision. Id. I must affirm the Commissioner's decision if, "after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions." Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

## ALJ Decision

The ALJ denied Wegleitner benefits after finding that she was not under a disability at any point from August 6, 2019, the date that her previous applications were denied, through July 20, 2021, the date of the decision. (Tr. 33).[2] At step one, the ALJ found that Wegleitner had not engaged in substantial gainful activity. (Tr.

---

[2] For purposes of Wegleitner's claim for a period of disability and disability insurance benefits, the ALJ found that she was last insured on September 30, 2019. (Tr. 16, 18).

4

18).  At step two, the ALJ found that Wegleitner had the following severe impairments: anxiety, depression, bipolar, and related disorders; obesity; migraines; borderline personality disorder; post-traumatic stress disorder; asthma; degenerative disc disease of the thoracic and lumbar spine; and nephrolithiasis and urinary incontinence.  (Tr. 19).  At step three, the ALJ found that Wegleitner did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 20).

At step four, the ALJ found that Wegleitner had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) but with several limitations.  (Tr. 23).  Based on this RFC, the ALJ found that Wegleitner was unable to perform any of her past relevant work.  (Tr. 32).  However, at step five, the ALJ found that Wegleitner was capable of performing other jobs that existed in significant numbers in the national economy.  (Tr. 32–33).  A vocational expert identified the following jobs within Wegleitner's RFC as existing in significant numbers in the national economy: laundry worker (15,000 positions); light cleaner/house cleaner (70,000 positions); and hand cleaner (20,000 positions).  (Id.)  Because the ALJ found that Wegleitner was capable of performing other jobs that existed in significant numbers in the national economy, he concluded that she was not under a disability at any point during the relevant period.  (Tr. 33).

### Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Wegleitner's recitation of facts, (Doc. 15-1), to the extent they are admitted by the Commissioner, (Doc. 16-1), as well as the additional facts submitted by the Commissioner, (Doc. 16-2), as they are not contested by Wegleitner. Additional facts will be discussed as necessary to address the parties' arguments.

### Discussion

Wegleitner claims that the ALJ's decision should be reversed and remanded because he erred in formulating her RFC. A claimant's RFC is the most the claimant can do despite her limitations, and an ALJ must assess it based on all relevant evidence in the claimant's case record. 20 C.F.R. § 404.1545(a)(1). Relevant evidence includes "medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (internal quotation marks omitted). Because a claimant's RFC is a medical question, an ALJ's RFC assessment "must be supported by some medical evidence of the claimant's ability to function in the workplace." Id. at 932 (internal quotation marks omitted). Wegleitner argues that the ALJ erred in formulating her RFC because his assessment did not include her need to be off work due to migraines or her need to use the restroom once per hour.

6

### A. Migraines

Wegleitner argues that the ALJ failed to adequately account for her migraines in formulating her RFC because (1) the limitations that he assessed did not address the additional triggers identified in the prior administrative medical findings of Daniel Gwartney, M.D., which included extreme cold and heat, humidity, fumes, odors, dusts, gases, and poor ventilation; and (2) he did not account for the frequency and severity of her migraines. Wegleitner claims that the record supports a finding that she needs to be absent from work more than once per month due to her migraines, and she notes that the vocational expert testified that employers would allow only one unexcused absence per month on average.

### 1. Dr. Gwartney's prior administrative medical findings

The ALJ did not commit reversible error with respect to Dr. Gwartney's prior administrative medical findings. A prior administrative medical finding is a finding, other than the ultimate determination of whether a claimant is disabled, about a medical issue made by an agency's medical or psychological consultant at a prior level of review based on his or her review of the evidence in the claimant's case record. 20 C.F.R. § 404.1513(a)(5). Prior administrative medical findings may relate to things such as the existence and severity of a claimant's impairments, the existence and severity of a claimant's symptoms, and a claimant's RFC. Id. While an ALJ is not required to adopt any prior administrative medical findings, such

7

evidence must be considered because the agencies' medical and psychological consultants are "highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a(b)(1).

Dr. Gwartney reviewed the evidence in Wegleitner's case record on June 1, 2020. (Tr. 108). Based on his review of the evidence, Dr. Gwartney found that Wegleitner had the following environmental limitations due to her migraines: she should avoid concentrated exposure to extreme cold and heat, humidity, noise, fumes, odors, dusts, gases, and poor ventilation; and she should avoid moderate exposure to heights, hazards, and machinery. (Tr. 106). Wegleitner argues that the ALJ erred in formulating her RFC, in part, because the limitations that he assessed did not address the additional triggers (i.e., environmental limitations) identified by Dr. Gwartney in his prior administrative medical findings.

Contrary to Wegleitner's suggestion, the limitations assessed by the ALJ did address most of the triggers identified by Dr. Gwartney. The ALJ found that Wegleitner could have only occasional exposure to irritants such as fumes, odors, dusts, and gasses. (Tr. 23). The ALJ found that Wegleitner should avoid noise above a moderate level. (Id.) And the ALJ found that Wegleitner could have no use of hazardous machinery, no exposure to unshielded moving mechanical parts, and no exposure to unprotected heights. (Id.) The ALJ also found that Wegleitner could have only occasional exposure to bright flickering or flashing lights and that she

8

could have no exposure to extreme vibrations. (Id.) The only triggers identified by Dr. Gwartney that were not specifically addressed by the ALJ were concentrated exposure to extreme cold and heat and concentrated exposure to humidity.

To the extent Wegleitner argues that the ALJ erred in formulating her RFC because he did not include limitations for concentrated exposure to extreme cold and heat and concentrated exposure to humidity, any such error was harmless. "An error is harmless when the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred." Lucus v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020) (internal quotation marks omitted). Here, there is no indication that the ALJ would have decided differently had he included limitations for concentrated exposure to extreme cold and heat and concentrated exposure to humidity because two of the three jobs identified by the vocational expert do not involve any exposure to such elements. See Dictionary of Occupational Titles 323.687-014, 1991 WL 672783 (the occupation of "cleaner, housekeeping" does not involve extreme cold or heat or humidity); Dictionary of Occupational Titles 709.687-010, 1991 WL 679134 (the occupation of "cleaner and polisher" does not involve extreme cold or heat or humidity). Because there is no indication that the ALJ would have decided differently had he included limitations for concentrated exposure to extreme cold and heat and concentrated exposure to humidity, any error with respect to those additional triggers was harmless.

2. The frequency and severity of Wegleitner's migraines

The ALJ did, however, commit reversible err with respect to Wegleitner's statements regarding the frequency and severity of her migraines. When evaluating evidence of pain or other symptoms, an ALJ may not ignore a claimant's subjective complaints. Bassinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984). An ALJ may discount a claimant's subjective complaints if "they are inconsistent with the evidence as a whole." Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015). In doing so, an ALJ must consider all of the evidence and make an express determination, detailing his reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record, and discussing the relevant factors in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012).

The relevant factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints. Id. at 1065–66; see also 20 C.F.R. § 404.1529(c). While an ALJ must consider these factors, he need not discuss how each factor supports his determination. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007). Nor is an ALJ required to cite Polaski if

10

he conducts an analysis pursuant to 20 C.F.R. §§ 404.1529 and 416.929. Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007). If an ALJ "explicitly discredits" a claimant's subjective complaints and "gives a good reason for doing so," a court should defer to that determination. Id.

In this case, Wegleitner testified at her hearing before the ALJ that she was suffering from about three to four migraines per week. (Tr. 54). Wegleitner also testified that she was taking medications to treat her migraines: Verapamil as a preventative medication and Nurtec after the onset of a migraine. (Id.) Wegleitner stated that these medications were helping her and that they had reduced the intensity of her migraines from "spot migraines" to "functioning migraines," meaning that the migraines would generally go away after two to four of hours if she used sunglasses and an ice pack and laid down in a cold room. (Tr. 54–55, 62). Wegleitner testified further that her treating physicians had not discussed doing anything different—for example, Botox—to address her migraines. (Tr. 55).

The ALJ found, as a general matter, that Wegleitner's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent or supported by the evidence of record. (Tr. 24). The ALJ did not cite Polaski or discuss every relevant factor in making this determination, but he stated in his decision that he considered all of Wegleitner's

11

symptoms based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 16-3p.  (Tr. 23).  With regard to Wegleitner's migraines specifically, the ALJ found that the objective medical evidence did not support a finding of migraines of a frequency and severity to prevent her from sustaining a normal work schedule on a regular and continuing basis.  (Tr. 28).  The ALJ also found that Wegleitner's history of migraines had been generally controlled with prescribed medications and that her daily activities were inconsistent with the alleged severity of her symptoms and limitations.  (Id.)

Although the ALJ found that the objective medical evidence did not support a finding of migraines of the frequency and severity alleged by Wegleitner, this alone was not a sufficient reason for discounting her statements.  See, e.g., Renstrom, 680 F.3d at 1066 (internal quotation marks omitted) ("An ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them."); Halverson v. Astrue, 600 F.3d 922, 931–32 (8th Cir. 2010) ("[T]he ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence.").  Therefore, in order to properly discount Wegleitner's statements regarding the frequency and severity of her migraines, the ALJ needed to identify other inconsistencies between her statements and the evidence in the record.  The ALJ identified two additional purported inconsistencies: the fact that Wegleitner's migraines had been generally

12

controlled with prescribed medications, and Wegleitner's daily activities. (Tr. 27–28). However, upon review of the record, it is unclear how Wegleitner's treatment with prescribed medications and daily activities were inconsistent with her statements regarding the frequency and severity of her migraines.

The ALJ stated in his decision that Wegleitner's "treatment ha[d] been conservative, consisting primarily of prescribed medication." (Tr. 27). The ALJ also stated that the evidence in the record indicated that Wegleitner's "physical impairments [were] treated, stable, and generally controlled with prescribed medication with no evidence of significant adverse side effects." (Id.) The ALJ went on to state that Wegleitner had a "history of migraine headaches treated, stable, and generally controlled with prescribed medication." (Tr. 28). It is true that an ALJ may properly consider a claimant's "relatively conservative treatment history" when evaluating the claimant's subjective complaints. Milam, 794 F.3d at 985. It is also true that "[i]f an impairment can be controlled by treatment or medication, it cannot be considered disabling." Renstrom, 680 F.3d at 1066 (internal quotation marks omitted). But Wegleitner testified that, even with her most recent prescribed medications, she continued to experience three to four migraines per week, which would generally go away after two to four of hours if she used sunglasses and an ice pack and laid down in a cold room. (Tr. 54–55, 62). It is unclear how Wegleitner's treatment with prescribed medications was inconsistent with her statements

13

regarding the frequency and severity of her migraines. It is also unclear whether Wegleitner was capable of sustaining a normal work schedule on a regular and continuing basis despite migraines of such frequency and severity.

The ALJ also stated that Wegleitner's daily activities were inconsistent with the alleged severity of her symptoms and limitations. (Tr. 28). According to the ALJ, Wegleitner was able to "essentially live and function independently, provide care for her own personal needs and for her minor child, prepare simple meals, perform light household chores (clean, laundry, etc.), handle money, and shop." (Id.) The Eighth Circuit has stated that "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." Halverson, 600 F.3d at 932 (internal quotation marks omitted). The Eighth Circuit has also stated, however, that "the ability to do activities such as light housework and visiting with friends alone are insufficient reason to discredit [a claimant's] subjective complaints." Milam, 794 F.3d at 985 (internal quotation marks omitted); see also Reed v. Barnhart, 399 F.3d 917, 923 (8th Cir. 2005) (internal quotation marks omitted) ("[T]his court has repeatedly observed that the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a claimant can perform full-time competitive work."). Here, the ALJ properly considered Wegleitner's daily activities when evaluating her statements regarding the frequency

14

and severity of her migraines, but it is unclear how her daily activities were inconsistent with her statements that she was experiencing three to four migraines per week that would generally go away after two to four of hours if she used sunglasses and an ice pack and laid down in a cold room. (Tr. 54–55, 62); see also Reed, 399 F.3d at 923 (finding no inconsistency between claimant's testimony and daily activities). And, again, it is unclear whether Wegleitner was capable of sustaining a normal work schedule on a regular and continuing basis despite migraines of such frequency and severity.

In sum, upon review of the record, I find that the ALJ did not adequately explain the purported inconsistencies between Wegleitner's statements regarding the frequency and severity of her migraines and the evidence in the record. Without further explanation, I am unable to determine whether the ALJ properly discounted Wegleitner's statements. Because I am unable to determine whether the ALJ properly discounted Wegleitner's statements, I am also unable to determine whether his decision is supported by substantial evidence. I will therefore remand this case for further evaluation of Wegleitner's migraines. Upon remand, the ALJ should specifically address the frequency and severity of Wegleitner's migraines and explain in greater detail why her statements regarding the frequency and severity of her migraines were (or were not) credible.

### B. Urinary Incontinence

Wegleitner also argues that the ALJ failed to adequately account for her urinary incontinence in formulating her RFC because he assigned an "arbitrary number of restroom breaks during an [eight] hour workday." Wegleitner claims that she needs to use the restroom once per hour, and she notes that the vocational expert testified that an individual would not be capable of competitive work if he or she needed an extra break every hour during an eight-hour workday.

Wegleitner testified at her hearing before the ALJ that she needed to use the restroom once per hour and that she dealt with urinary urgency. (Tr. 66). In his decision, the ALJ noted Wegleitner's statements regarding her urinary incontinence, but he found that the evidence in the record did not support a finding of urinary incontinence of a frequency and severity to require multiple extra unscheduled restroom breaks or to interfere with her ability to sustain a normal work schedule. (Tr. 28). In his RFC assessment, the ALJ included a limitation for Wegleitner to have only one extra restroom break of no more than three to five minutes in addition to the regularly scheduled breaks during an eight-hour workday. (Tr. 23).

It is unclear what evidence the ALJ was referring to when he stated that the evidence in the record did not support a finding of urinary incontinence of a frequency and severity to require multiple extra unscheduled restroom breaks or to interfere with Wegleitner's ability to sustain a normal work schedule. Before

16

discounting Wegleitner's statements regarding the frequency and severity of her urinary incontinence, the ALJ should have identified inconsistencies between her statements and the evidence in the record. Given that the vocational expert testified that an individual would be precluded from competitive work in the national economy if he or she required an extra restroom break every hour, (Tr. 76), I cannot determine whether the ALJ's decision is supported by substantial evidence without first determining whether he properly discounted Wegleitner's statements regarding the frequency and severity of her urinary incontinence. Without further explanation, I am unable to determine whether the ALJ properly discounted Wegleitner's statements. I will therefore also remand this case for further evaluation of Wegleitner's urinary incontinence. Upon remand, the ALJ should specifically address the frequency and severity of Wegleitner's urinary incontinence and explain in greater detail why her statements regarding the frequency and severity of her urinary incontinence were (or were not) credible.

## CONCLUSION

The ALJ discounted Wegleitner's statements regarding the frequency and severity of her migraines and urinary incontinence, but he did not adequately explain why he discounted her statements. As a result, I am unable to determine whether the ALJ properly discounted Wegleitner's statements, and I am unable to determine whether his decision is supported by substantial evidence. The Commissioner's

17

decision will therefore be reversed and remanded for further evaluation of Wegleitner's migraines and urinary incontinence. Upon remand, the ALJ should specifically address the frequency and severity of Wegleitner's migraines and urinary incontinence and explain in greater detail why her statements regarding the frequency and severity of those impairments were (or were not) credible.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** under sentence four of 42 U.S.C. § 405(g), and this case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

A separate Judgment in accordance with this Memorandum and Order will be entered on this same date.

                                                RODNEY W. SIPPEL
                                                UNITED STATES DISTRICT JUDGE

Dated this 27th day of March 2023.